995 F.2d 1068
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael Glen JACKSON, Defendant-Appellant.
 No. 92-3680.
 United States Court of Appeals, Sixth Circuit.
 June 1, 1993.
 
 Before: JUDGES MARTIN, BOGGS and KRUPANSKY, CIRCUIT JUDGES.
 PER CURIAM.
 
 
 1
 The defendant, Michael Jackson (defendant-Jackson), appealed from the guilty plea, sentence, and final order filed in the district court. Defendant entered into a conditional plea of guilty to one count of unlawful receipt of a firearm by a convicted felon in violation of 18 U.S.C. sections 922(g)(1)[1] and 924(e)[2]. On appeal, Jackson asserted that the district court erred when it denied his motion to suppress evidence.
 
 
 2
 Before entering his plea of guilty of unlawful receipt of a firearm by a convicted felon, the defendant filed a motion to suppress firearms seized from his person on June 6, 1990, and from his residence on February 22, 1991. The following evidence was offered at the evidentiary hearing on the motion to suppress conducted on February 26, 1992.
 
 
 3
 On June 6, 1990, at eight o'clock in the evening, Detective Thomas Acklin (Acklin), an undercover detective assigned to the Cleveland Police Department Narcotics Unit, and another detective were in an unmarked police vehicle traveling north bound on East 131st Street. As they approached Glendale Avenue, they observed a white Lexus westbound on Glendale, which failed to stop at the stop sign at the corner of Glendale Avenue and East 131st Street. As the vehicle proceeded north, Officer Acklin believed he recognized the automobile. As the vehicle turned west onto Lenacrave Avenue, Acklin recognized the driver as the defendant, whom he knew from an ongoing narcotics investigation. Acklin also remembered that the defendant's driver's license was under suspension. The officers decided to stop the defendant for the traffic violations. Officer Acklin warned his associate that they proceed with caution because the defendant was known to carry firearms.
 
 
 4
 The officers stopped the vehicle. As Officer Acklin approached the driver's side of the automobile, he observed Jackson lean toward the passenger seat, as though he was speaking with someone. When Acklin arrived at the driver's door, the defendant lowered the window, and Acklin noticed that the defendant was talking on the car phone. Acklin requested the defendant to conclude his telephone conversation and exit the vehicle. During this conversation, Officer Acklin could see a gun protruding from a jacket pocket on the front passenger seat of the vehicle. The officers confiscated the weapon and cited defendant for three traffic violations: driving with a suspended license, failing to stop at a marked intersection, and carrying a fictitious driver's license.
 
 
 5
 During the evidentiary hearing conducted by the district court on the motion to suppress, the defendant testified that on the evening of June 6, he was returning home from work when he was stopped by the police officers. He claimed that he did not commit any traffic violations, although he admitted that he carried the fictitious driver's license and that his license had been suspended. He further stated that the weapon inside the pocket of his jacket was not visible from outside his vehicle. He alleged that after he exited the vehicle, the officers searched under the front seat of the automobile as well as defendant's jacket, before discovering the weapon.
 
 
 6
 Subsequently, on February 6, 1991, the defendant and two co-defendants were charged with various firearm offenses in a ten-count indictment. Count ten of the indictment charged Jackson with unlawful possession of a firearm by a convicted felon in violation of 18 U.S.C. section 922(g)(1) and 924(e).
 
 
 7
 On February 22, 1991, Special Agent Kimmell (Kimmell) of the Bureau of Alcohol, Tobacco, and Firearms (BATF) executed an arrest warrant for Jackson, which was issued pursuant to the multi-count indictment returned against him by the grand jury. Kimmell testified that between six and seven o'clock in the morning, the BATF "entry team" executed the arrest warrant by knocking on the door of defendant's home, identifying themselves as government agents, and requesting entry into the residence to execute the arrest warrant. When no response was evident, the agents forced entry into the residence. Once inside, the officers performed a protective sweep of the premises and located the defendant and his daughter in the upstairs master bedroom. Upon entry into the bedroom, the officers advised the defendant that they were BATF agents with a warrant for his arrest. The sweep of the area continued and the officers discovered a gun cabinet and five firearms in plain view located in a closet of the master bedroom. The defendant was advised of his Miranda rights and permitted to telephone his attorney.
 
 
 8
 Agent Kimmell testified that he left the premises to obtain a warrant to search the residence as a result of having discovered the guns located in the master bedroom closet. He returned at approximately two o'clock p.m. The BATF agents remained in the residence until Kimmell returned with the search warrant. Thereafter, the agents confiscated the five firearms that had been discovered in the closet and one pistol found in a dresser drawer next to defendant's bed.
 
 
 9
 As a result of the search and seizure, a second indictment was returned against the defendant on April 3, 1991, charging him with unlawful possession of six additional firearms. This indictment was superseded on September 17, 1991, by a new indictment that charged him with one count of unlawful possession of six firearms by a convicted felon in violation of 18 U.S.C. sections 922(g)(1) and 924(e), and one count of knowingly making false statements to a licensed firearms dealer in violation of 18 U.S.C. sections 922(a)(6) and 924(a)(1)(B).
 
 
 10
 The defendant alleged that he did not hear the "entry team" knock or announce their presence. His first awareness of the BATF agents materialized when they entered his bedroom with guns drawn. The defendant explained that the guns taken from the master bedroom closet were not visible because the closet door was closed.
 
 
 11
 The district court denied in part and granted in part the defendant's motion to suppress. It credited the government's evidence that the initial stop of the defendant's vehicle on June 6, 1990 for traffic violations was lawful because the officer observed the defendant run the stop sign and had knowledge that the defendant was driving with a suspended license, thus constituting probable cause to believe that Jackson had violated traffic laws. Moreover, the officer issued the defendant three traffic citations which compelled the defendant's state court appearance. The court also determined that the weapon in defendant's vehicle was in plain view of the arresting officer.
 
 
 12
 The court further determined that the five firearms discovered during the protective sweep of the defendant's home were properly seized. The court concluded that the officers had the right to open the bedroom closet door during the protective sweep and that the gun cabinet and five firearms were within plain view. The court then reasoned that at this point in time the agents knew the house was secured and for some obscure reason delayed placing the defendant in custody. Rather, they commandeered the home and remained on the premises for over five hours until Agent Kimmell returned with a search warrant. Accordingly, the court suppressed as evidence the one pistol found in defendant's dresser drawer, which was discovered as a consequence of the search warrant.
 
 
 13
 Subsequently, the defendant entered a conditional plea of guilty to count ten of the February 6, 1991 indictment for unlawful receipt of a firearm by a convicted felon. The district court sentenced him to 15 years of imprisonment and four years of supervised release. The defendant timely filed a notice of appeal.
 
 
 14
 On appeal, the defendant argued that the initial stop of his vehicle on June 6, 1990 was pretextual, and therefore, the court should suppress the evidence seized from his automobile. In ruling on whether a stop by a traffic officer was pretextual, this Circuit conducts "an objective inquiry into whether a reasonable officer would have made the stop based on a probable cause for a traffic violation in the absence of an invalid purpose." United States v. Crotinger, 928 F.2d 203, 206 (6th Cir.1991).
 
 
 15
 In the instant action, the district court concluded that the officer's observations of the defendant running the stop sign and his knowledge that the defendant was driving while his license was under suspension constituted probable cause to believe that Jackson had violated one or more traffic laws. Accordingly, the court's determination that the initial stop was not pretextual was not clearly erroneous. Therefore, this assignment of error is without merit.
 
 
 16
 The defendant's second assignment of error is equally without merit. He charged that the "entry team" violated the "knock and announce" rule set forth in 18 U.S.C. section 3109[3], which also applies to the forcible entry of a home when officers seek to execute an arrest warrant. United States v. Murrie, 534 F.2d 695, 697 (6th Cir.1976).
 
 
 17
 In the instant action, the district court credited the testimony of Agent Kimmell who stated that the "entry team" complied with the requirements set forth in section 3109. A review of the record disclosed that the "entry team" identified their presence and purpose, and when there was no response the entry team forcibly entered the premises. Accordingly, the district court's finding that the officers lawfully entered the premises was not clearly erroneous.
 
 
 18
 Finally, the defendant asserted that the officers conducted an illegal search of his bedroom closet during the protective sweep of the premises because the closet door was closed, and therefore, the firearms discovered inside were not within plain view. The United States Supreme Court has directed that as an incident to an arrest officers may, as "a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." Maryland v. Buie, 494 U.S. 325, 335 (1990). Therefore, even if the closet door in the master bedroom had been closed when the officers entered to arrest the defendant as charged by the defendant, the officers were justified in opening the closet door during the protective sweep as a precautionary matter. Accordingly, this assignment of error is without merit.
 
 
 19
 After a review of the record in its entirety and the arguments of counsel, the disposition of the district court is hereby AFFIRMED.
 
 
 
 [1]
 Section 922(g)(1) provides in pertinent part:
 (g) It shall be unlawful for any person--
 (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
 * * *
 to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.
 18 U.S.C. § 922(g)(1) (Supp.1993).
 
 
 [2]
 Section 924(e)(1) provides that
 (e)(1) In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g), and such person shall not be eligible for parole with respect to the sentence imposed under this subsection.
 18 U.S.C. § 924(e)(1) (Supp.1993).
 
 
 [3]
 Section 3109 provides in pertinent part that
 [An] officer may break open any outer or inner door or window of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.
 18 U.S.C. § 3109 (1985).